UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,            :
                                      :
       Plaintiff,                     :
                                      :
    v.                                :   NO. 3-CV-99-1160
                                      :   (CHIEF JUDGE VANASKIE)
                                      :
ALCAN ALUMINUM CORPORATION,           :
                                      :
       Defendant.                     :

## MEMORANDUM

This action under Sections 107 and 113 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9607 and 9613, is a sequel to United States v. Alcan Aluminum Corporation, Civ. A. No. 89-CV-1657, in which this Court determined that Defendant Alcan Aluminum Corporation ("Alcan") was jointly and severally liable for response costs incurred by the United States Environmental Protection Agency ("EPA") as a result of a release of hazardous substances at the Butler Mine Tunnel Superfund Site ("the Butler Tunnel Site"), located in Pittston Township, Pennsylvania.  See United States v. Alcan Aluminum Corp., 892 F.Supp. 648 (M.D. Pa. 1995), aff'd, 96 F.3d 1434 (3d Cir. 1996) (Table) (Alcan-Butler I).  In this action (sometimes referred to as "Alcan-Butler II"), the United States seeks to recover the costs incurred since the entry of judgment against Alcan and in favor of the United States in Alcan-Butler I.

Pending before the Court is the United States' motion for partial summary judgment based upon the preclusive effect of the prior judgment in Alcan-Butler I. Alcan does not dispute that the ordinary prerequisites for issue preclusion are satisfied here, but argues against summary judgment on the ground that it would be manifestly unjust to continue to hold Alcan liable when the hazardous substances found in its waste product present at the Butler Tunnel Site were below naturally-occurring levels. This argument is essentially the same one that was rejected in Alcan-Butler I, as well as by the Second Circuit in United States v. Alcan Aluminum Corp., 315 F.3d 179 (2d Cir. 2003), cert. denied, 540 U.S. 1103 (2004). Having once again carefully considered Alcan's contentions, and concluding that no manifest injustice is caused by adhering to the prior determination of this Court, affirmed by the Third Circuit, and supported as well by the Second Circuit ruling, the United States' motion for partial summary judgment will be granted.

## I. BACKGROUND

The pertinent facts are not in dispute. Alcan, an Ohio corporation, manufactured aluminum sheet and plate products in Oswego, New York, from 1965 through at least 1989. See United States v. Alcan Aluminum Corp., 964 F.2d 252, 256 (3d Cir. 1992). In the manufacturing process, Alcan used an emulsion, consisting of 95 percent deionized water and 5 percent mineral oil. Id. During the manufacturing process, trace levels of copper, chromium, cadmium, zinc and lead, "hazardous substances" under CERCLA, were added to

2

the emulsion.  Id.

In the late 1970's, Alcan contracted with a waste hauler to dispose of the used emulsion.  Id.  From mid-1978 to late 1979, the waste hauler dumped approximately 32,500 to 37,500 gallons of Alcan's used emulsion down a borehole located on property operated by Hi-Way Auto Service.  Other generators of waste containing hazardous substances also use the borehole as an illegal disposal site.

The borehole led to a network of deep underground mines and related tunnels, pools and waterways bordering the east bank of the Susquehanna River in Pittston, Pennsylvania. Id. at 255.  The mine workings were drained by the Butler Mine Tunnel, which fed directly into the Susquehanna River.  Id.

In September of 1985, approximately 100,000 gallons of oily waste contaminated with hazardous substances were discharged from the Butler Mine Tunnel into the Susquehanna River.  To address this release, EPA incurred response costs in excess of $1.3 million.  Alcan's used emulsion was commingled with the waste materials that were the subject of the response action.

In November, 1989, the United States brought Alcan-Butler I against Alcan and 19 other defendants who purportedly generated the waste materials dumped into the borehole and which made their way into the Susquehanna River.  The government settled with 19 of the defendants, and then moved for summary judgment against Alcan, the lone non-settling

generator defendant. The United States asserted that Alcan was jointly and severally liable for the remaining unreimbursed response costs of $473,790.18, or more than 35 percent of the total response costs. Alcan cross-moved for summary judgment, contending that its waste emulsion was not a "hazardous substance," as that term is defined by CERCLA, because the levels of copper, cadmium, chromium, lead and zinc found in the emulsion were below naturally-occurring levels.

By Memorandum and Order dated May 8, 1991, this Court ruled in favor of the United States, and Alcan appealed. The Third Circuit concluded that Alcan was subject to liability because its used emulsion contained elements defined as "hazardous substances" in 42 U.S.C. § 9601(14). 964 F.2d at 259-64. The Court of Appeals specifically rejected Alcan's argument that "it should not be held liable for response costs incurred by the Government in cleaning the Susquehanna River because the level of hazardous substances in its emulsion was below that which naturally occurs and thus could not have contributed to the environmental injury." Id. at 259. The Third Circuit reached this conclusion based upon the plain language of CERCLA, its legislative history, EPA regulations and EPA policy. Id. at 271.

The Third Circuit also rejected Alcan's contention that the United States must "prove that *Alcan's emulsion* caused or contributed to the release or the Government's incurrence of response costs." Id. at 264 (italics in original). Once again, the Third Circuit relied upon

4

the clear terms of the statute and legislative history, as well as a consistent line of cases. Id. at 264-66.

The Third Circuit, however, declined to affirm the entry of judgment in favor of Alcan at that time. Instead, the court concluded that Alcan should be given an opportunity "to avoid liability otherwise established" by showing "that the emulsion did not or could not, *when mixed with other hazardous waste*, contribute to the release and the resultant response costs . . . ." Id. at 269, 270 (italics in original). If such a showing was made, Alcan would not be responsible for any response costs. Id. Alcan was also afforded the opportunity to limit its liability by showing that the harm in question was divisible and that the damages were capable of some reasonable apportionment. Id. at 271.

On remand, both Alcan and the United States again moved for summary judgment. Alcan reiterated its argument that its liability could be determined only in the context of the constituents of its used emulsion that are defined to be "hazardous substances," and because the heavy metals found in its hazardous substance were below background levels, no liability could be imposed. In this regard, Alcan conceded that it could not prevail "if the hazardous substance of concern is the used emulsion itself." 892 F. Supp. at 654. By opinion dated June 28, 1995, this Court rejected Alcan's position, finding that "the environmental harm posed by the medium that contains CERCLA-defined 'hazardous substances' cannot be ignored." Id. at 655. Because Alcan had presented neither evidence

5

nor argument that its used emulsion was environmentally benign, Alcan's summary judgment motion was denied. Id. at 655-56.

This Court then turned to the question of divisibility of harm. Again, Alcan relied exclusively on its position that there can be no liability because its emulsion did not contain hazardous substances at levels above those found in nature.  Alcan, although certainly accorded the opportunity to do so, did not present evidence on such pertinent matters as the "relative toxicity, migratory potential and synergistic capacity" of the emulsion.  964 F.2d at 269.  Accordingly, the United States' motion for summary judgment was granted; Alcan was determined to be jointly and severally liable for all response costs; and judgment was entered in favor of the United States for the full amount of its unreimbursed response costs, i.e., $473,790.18.

Alcan then moved for reconsideration.  Alcan asserted, inter alia, that it could not be held liable at all because the EPA response action did not specifically target Alcan's emulsion.  Because this fact was not pertinent to CERCLA liability, the motion for reconsideration was denied. (United States v. Alcan Aluminum Corp., Civ. A. No. 89-1657 (M.D. Pa. Oct. 4, 1995).)  In denying Alcan's motion for reconsideration, this Court observed:

> Alcan's strident rhetoric . . . ignore[s] the fact that Congress
> conditioned liability on the release of hazardous substances.
> Alcan's emulsion contains hazardous substances and was
> released into the environment at the Site.  Under the statutory

6

> scheme, a release of a hazardous substance may lead to liability, even joint and several liability, for a polluter whose contaminants do not have chronic adverse consequences for the environment. Common law principles of apportionment of liability can ameliorate the consequences and counter the 'strong arm' settlement tactics that joint and several liability may permit, but Alcan has eschewed that opportunity to minimize its liability.

Id. at 5 n.6.

The Third Circuit, in an unpublished opinion, affirmed this Court's determination that Alcan was jointly and severally liable for response costs incurred at the Butler Tunnel Site. 96 F.3d 1434 (3d Cir. 1996) (Table). The Supreme Court denied certiorari. 521 U.S. 1103 (1997).

On June 2, 1998, Alcan filed an action in the United States District Court for the District of Massachusetts, seeking contribution from a number of parties with respect to the Butler Tunnel Site. (Alcan Aluminum Corp. v. Pabst Brewing Co., et al., 98-CV-11062 (D. Mass.)) In its contribution action, Alcan argued that the first consent decree, by which 19 of the 20 generator defendants had extinguished their liability with respect to response costs incurred at the Butler Tunnel Site, was "ineffective."

On July 1, 1999, the United States brought this action to recover from Alcan response costs incurred subsequent to the entry of judgment in Alcan-Butler I. Alcan moved to dismiss this action or to transfer it to the District of Massachusetts for consolidation, asserting that, because the lawsuit commenced by Alcan in Massachusetts sought a

declaratory judgment against the United States for any future response costs, "this action is properly styled as a counterclaim or set off by the United States in the existing case in Massachusetts and this action should be dismissed or, in the alternative, transferred to the district court in Massachusetts for consolidation." (Brief in Support of Motion to Dismiss (Dkt. Entry 6) at 3.)

The United States responded to Alcan's motion and filed a cross-motion for partial summary judgment on liability on October 4, 1999. The United States asserted that Alcan's liability was established by the final judgment in the first litigation, and that the only possible dispute in this case was whether the additional response costs claimed by the United States were consistent with the National Contingency Plan.

A case management conference was conducted on November 4, 1999. At that conference, Alcan indicated that it intended to seek my disqualification. On December 15, 1999, Alcan moved for my recusal. On March 1, 2000, Alcan moved in this action for relief from the June, 1995 judgment entered against it in <u>Alcan-Butler I</u>.

By Memorandum and Order docketed on February 7, 2001, Alcan's motion for recusal was denied. Alcan then sought relief in the Third Circuit by way of a mandamus petition, causing this action to be stayed. (<u>See</u> Order of March 19, 2001 (Dkt. Entry 39).) While Alcan litigated the question of whether my disqualification was warranted, the Massachusetts action was transferred to this Court and assigned to me under Docket No.

3:00-CV-01052. After both the Third Circuit and the Supreme Court of the United States denied Alcan's mandamus petitions, this litigation was re-opened. (Order of February 8, 2002 (Dkt. Entry 42).)

On February 26, 2002, litigation in this matter was once again stayed, this time to await the outcome of Alcan's appeal to the United States Court of Appeals for the Second Circuit from a judgment holding Alcan jointly and severally liable for response costs incurred at two New York sites where its used emulsion had been discarded. The action transferred from the District of Massachusetts was also stayed pending the Second Circuit's decision.

On January 7, 2003, the Second Circuit issued its ruling, affirming the Northern District of New York's determination that Alcan was jointly and severally responsible for response costs incurred at two Superfund sites where Alcan's used emulsion had been dumped. <u>United States v. Alcan Aluminum Corp.</u>, 315 F.3d 179 (2d Cir. 2003). In affirming liability, the Second Circuit reiterated that the government may recover response costs by proving that "'(1) there was a release or threatened release, which (2) caused incurrence of response costs, and (3) . . . the defendant generated hazardous waste at the clean-up site.'" <u>Id</u>. at 184 (<u>quoting</u> <u>United States v. Alcan Aluminum Corp.</u>, 990 F.2d 711, 721 (2d Cir. 1993)). The Second Circuit further observed that "[t]he government is not required to show that a specific defendant's waste caused the incurrence of cleanup costs in order for strict liability to attach to that defendant." <u>Id</u>. Because it was undisputed that Alcan's used

emulsion was disposed of at the sites in question, and it was undisputed that the emulsion contained "elements and their respective compounds . . . identified as 'hazardous substances' under CERCLA," id. at 184, Alcan was subject to liability unless it could prove "'that its oil emulsion, when mixed with other hazardous waste, did not contribute to the release and clean-up costs that followed, or contributed at most to only a divisible portion of the harm.'" Id. at 185 (citations omitted). Like this Court, the Second Circuit ruled that Alcan could not escape liability simply by showing that the hazardous substances found in its waste emulsion were not targets of the response action. Id. at 187-88. Instead, the effect of the emulsion as a whole had to be assessed, and Alcan had "ignored the likelihood that the cumulative impact of its waste emulsion exceeded the impact of the emulsion's constituents considered individually, and neglected to account for the emulsion's chemical and physical interaction with other hazardous substances already at the site." Id. at 187. On January 12, 2004, the Supreme Court denied Alcan's petition for a writ of certiorari in the Second Circuit case. 540 U.S. 1103 (2004).

By letter dated May 25, 2004, the United States requested that the stay of litigation be lifted in this matter. Following a telephonic conference conducted on June 29, 2004, this Court directed that this litigation be re-opened and established a schedule for submission of supplemental briefs on the government's motion for partial summary judgment. Following the submission of the supplemental briefs, oral argument was conducted on November 18,

2004.[1]

## II.     DISCUSSION

The government's motion for summary judgment as to liability rests upon the preclusive effect ordinarily accorded a prior final judgment.  "The doctrine describing the effect of former adjudications on subsequent actions has a number of aspects, and is referred to by a variety of terms, including res judicata, merger, bar, and collateral and direct estoppel."  Burlington Northern Railway Co. v. Hyundai Merchant Marine, Ltd., 63 F.3d 1227, 1231 n.2 (3d Cir. 1995).   In the context of this action, issue preclusion, otherwise known as collateral estoppel, appears to be the most apt expression of the effect to be accorded the rulings in Alcan-Butler I.  Succinctly stated, "issue preclusion ensures that 'once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.'"  Id. at 1231 (quoting Montana v. United States, 440 U.S. 147, 153 (1979)).

---

[1] During oral argument, counsel for Alcan informed the Court that its contribution action transferred to this Court from the District of Massachusetts could be dismissed in light of this Court's determination in another contribution action commenced by Alcan in this Court, captioned Alcan Aluminum Corp. v. Butler Aviation, et al., No. 3:02-CV-00562, that the consent decree in Alcan Butler I foreclosed Alcan's contribution claims.  Accordingly, by Order dated November 22, 2004, the contribution action transferred from the District of Massachusetts was dismissed.  The disposition of the contribution action necessarily requires denial of Alcan's motion to dismiss filed in this case.

The prerequisites for application of the doctrine of issue preclusion are plainly met here.[2] That is, the issue on which the United States seeks partial summary judgment – Alcan's joint and several liability for response costs incurred at the Butler Tunnel Site – is the same as that which was involved in Alcan-Butler I. That issue was fully litigated, and it was decided by a final and valid judgment. Moreover, it is clear that the determination of Alcan's joint and several liability was essential to the prior judgment.

Alcan attempts to avoid the import of the prior final judgment by contending that the rulings of this Court and the Third Circuit (as well as the rulings of the Northern District of New York and the Second Circuit) were so erroneous that application of the doctrine of collateral estoppel would work a manifest injustice. In support of its position, Alcan points to the Third Circuit's ruling in Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc., 123 F.3d 111 (3d Cir. 1997)("PIRG"). In PIRG, our Court of Appeals considered the related doctrine of "law of the case" in the context of a prior ruling that plaintiffs had standing to maintain an action for alleged violations of the defendant's National Pollution Discharge Elimination System ("NPDES") permit. As the court explained, "[t]he law of the case doctrine directs courts to refrain from re-deciding issues that were

---

[2]As a general rule, for collateral estoppel to apply: (1) the issue sought to be precluded must be the same as the one involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the prior judgment. See In re: Docteroff, 133 F.3d 210, 214 (3d Cir. 1997).

12

resolved earlier in the litigation." Id. at 116. Based upon averments that plaintiffs were injured by violations of the NPDES permit, the Third Circuit initially sustained the district court's finding that plaintiffs had standing. Following an evidentiary hearing conducted on remand, the district court concluded that the permit violations did not cause any harm. The Third Circuit explained that "[w]hen a district court issues findings that undermine an earlier conclusion that the plaintiffs before it have standing to sue, the court creates exactly that type of 'extraordinary circumstance' that warrants reconsideration of the standing issue." Id. at 117. That is, because injury is a sine qua non of standing and the permit violations could not have caused any injury, the question of standing could be reconsidered. In holding that the law of the case need not be followed in such a circumstance, the court emphasized that "the concerns implicated by the issue of standing – the separation of powers and the limitation of this Court's power to hearing cases or controversies under Article III of the Constitution – trump the prudential goals of preserving judicial economy and finality." Id. at 118.

    Of course, the jurisdictional concerns raised by the issue of standing are not present here. Thus, the "prudential goals of preserving judicial economy and finality" weigh more strongly in favor of according preclusive effect to the prior final judgment in Alcan-Butler I than the prior standing ruling in PIRG. Moreover, the law of the case doctrine involves an "exercise of discretion," id. at 116, and thus "does not have the finality of the doctrine of res

13

judicata." Burke v. Pittsburgh Limestone Corp., 375 Pa. 390, 394, 100 A.2d 595, 598 (1953).  That is, the law of the case doctrine "directs discretion; [the doctrine of res judicata] supersedes it and compels judgment." Id.

As explained more than one century ago:

> The general principle announced in numerous cases is that a right, question or fact distinctly put in issue, and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified.  This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination.  <u>Its enforcement is essential to the maintenance of social order, for the aid of judicial tribunals would not be invoked for the vindication of rights of person and property if, as between parties and their privies, conclusiveness did not attend the judgment of such tribunals in respect of all matters properly put in issue and actually determined by them</u>.

Southern Pacific R.R. v. United States, 168 U.S. 1, 48-49 (1897)(emphasis added).

The doctrine is intended to prevent the repetitive presentation of evidence and argument where, as here, a party stubbornly adheres to a position conclusively rejected by a court in earlier litigation.  Confidence in the adjudication process would be severely undermined were a party not bound by judicial determinations made after a full and fair opportunity to be heard.

14

Furthermore, Alcan has not presented the type of "extraordinary circumstances" that may suffice to warrant avoiding the preclusive effect of the final judgment in Alcan-Butler I. In PIRG, our Court of Appeals indicated that "extraordinary circumstances" sufficient to overcome the law of the case doctrine include the availability of new evidence, the announcement of a supervening new law, or the conclusion that the earlier decision was clearly erroneous and would create manifest injustice.  PIRG, 123 F.3d at 117.  Similarly, some courts have recognized that the res judicata effect of a prior judgment may be avoided where "(1) a change in the applicable law clearly has occurred since the conclusion of the first action, thus rendering incorrect the legal principles on which the first action was decided, and (2) application of traditional principles of res judicata would cause manifest injustice." Kirksey v. City of Jackson, 714 F.2d 42, 44 (5th Cir. 1983).  In this case, there has been no change in the applicable statutory or decisional law that would render incorrect the legal principles that underpin Alcan-Butler I.  Nor is there any new evidence that is now being presented for consideration.

Alcan argues that the rulings in this case and in the Second Circuit cases were "clearly erroneous" because they cannot be reconciled with scientific principles.  This is essentially the same argument previously presented to this Court as well as the Courts of Appeals for the Second and Third Circuits.  What Alcan continues to ignore is that the rulings adverse to it are based upon interpretations of the CERCLA liability scheme.  Under

CERCLA, the fact that materials classified as "hazardous substances" exist at below ambient levels in Alcan's emulsion does not remove the emulsion from CERCLA's purview. Moreover, liability is not dependent upon the government establishing a causal relationship between the hazardous substances found in Alcan's waste and the response costs that were incurred. This is the liability scheme created by Congress. It is intended to clean up wastes that contain "hazardous substances," and is not limited to wastes that contain hazardous substances above a certain maximum contaminant level. While this approach may be flawed as a matter of science, it is the prerogative of Congress to best determine how pollution is to be redressed.

The courts have added a common law gloss to the legislative strict liability rule by allowing waste generators, such as Alcan, an opportunity to show divisible harm or an apportionment of harm. In this case, Alcan was accorded a full opportunity to prove that its "emulsion did not or could not, <u>when mixed with other hazardous waste</u>, contribute to the release and the resultant response costs . . . ." Alcan-Butler I, 964 F.2d at 270 (emphasis in original). Alcan did not do so.

In light of the statutory scheme, and the common law principles of divisibility of harm and apportionment of liability applied to that scheme, there was no error committed in determining that Alcan is jointly and severally liable for the Butler Tunnel Site response costs. Alcan laments that it has been put to the impossible burden of proving that its

emulsion is environmentally benign.  This argument begs too much.  Its emulsion is simply not like rain water that contains heavy metals at ambient levels.  Under these circumstances, it would work a manifest injustice to not accord the prior judgment preclusive effect here.  As stated by this Court in denying Alcan's motion for reconsideration in <u>Alcan-Butler I</u>, "Alcan's perceived unfairness in having to contribute to the cost of remediating the Site at which thousands of gallons of its emulsion was dumped must . . . be remedied by the creators of this liability scheme, Congress."  (Memorandum and Order of Oct. 4, 1995 (Dkt. Entry 167) at 5.)[3]

## III.   CONCLUSION

For the reasons set forth above, the United States' motion for partial summary judgment will be granted.[4]  An appropriate Order follows.

> s/ Thomas I. Vanaskie
> Thomas I. Vanaskie, Chief Judge
> Middle District of Pennsylvania

---

[3] In a post-argument submission, Alcan contended that both this Court and the Third Circuit had erroneously applied the Third Circuit's first ruling by concluding that the waste emulsion as a whole, as opposed to its constituents, had to be considered.  Of course, Alcan made this argument in <u>Alcan-Butler I</u> to this Court and the Third Circuit, without success, and further consideration of the claim is necessarily foreclosed.

[4] During oral argument, Alcan conceded that a motion for relief from judgment filed in this action, but directed at the judgment in <u>Alcan-Butler I</u>, essentially raised the same issues as those presented on the motion for partial summary judgment.  Accordingly, the motion for relief from judgment will be denied.

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | NO. 3-CV-99-1160 |
| | : | (CHIEF JUDGE VANASKIE) |
| ALCAN ALUMINUM CORPORATION, | : | |
| Defendant. | : | |

## O R D E R

**NOW, THIS 16th DAY OF SEPTEMBER, 2005,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion to Dismiss or to Transfer (Dkt. Entry 5) is **DENIED**.

2. Plaintiff's Motion for Partial Summary Judgment (Dkt. Entry 10) is **GRANTED**.

3. Defendant's Motion for Relief from Judgment (Dkt. Entry 26) is **DENIED**.

4. A telephonic scheduling conference will be conducted on **Wednesday, October 19, 2005 at 9:30 a.m.** Counsel for plaintiff is responsible for placing the call to **570-207-5720** and all parties shall be ready to proceed before the undersigned is contacted.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania
